COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Clements and Beales
Argued at Richmond, Virginia


KELLY DINELLE PAYNE
                                                        OPINION BY
v.      Record No. 3159-06-2              CHIEF JUDGE WALTER S. FELTON, JR.
                                                        JUNE 3, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

Dean C. Marcus (Bain Sheldon, PLC, on brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Following a jury trial, Kelly Dinelle Payne ("appellant") was convicted of felony

homicide, in violation of Code § 18.2-33; aggravated involuntary manslaughter, in violation of

Code § 18.2-36.1(B); and two charges of felony hit-and-run, in violation of Code § 46.2-894.

She was sentenced to twenty years imprisonment for each of the homicide convictions.

Appellant's felony hit-and-run convictions are not before us on appeal.  She contends the

punishments imposed for felony homicide and aggravated involuntary manslaughter of a single

victim subjected her to double jeopardy in violation of the Fifth Amendment to the United States

Constitution.  Finding no error on the part of the trial court, we affirm appellant's convictions.

I.

On appeal of a conviction, "the evidence and all reasonable inferences flowing therefrom

must be viewed in the light most favorable to [the Commonwealth,] the prevailing party in the

trial court."  Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  So

viewed, the evidence established that when appellant arrived at work on a morning in March

2006, driving a white pickup truck, her breath smelled of alcohol. She drank alcohol throughout the day at work, and her behavior became so "flirtatious," "irrational," and "erratic" that her employer told her to leave work before the scheduled end of her workday.

Appellant drove the white pickup truck out of her employer's parking lot, "shot across" the road, and a few minutes later "slammed" into a car driven by Ruth Ann Priest stopped at a red light. The collision was sufficiently violent to knock the rear bumper off of Priest's car and to jerk Priest "forward pretty hard." Priest called 911 to report the accident, describing appellant's vehicle as a white pickup truck and giving the truck's license plate number. Although she initially told her husband and a police officer that she was not hurt, Priest drove herself from the collision scene to a medical facility where she received treatment for injuries she received in the collision.

Following the collision with Priest's car, appellant remained in her truck with a "dazed" expression on her face for a few minutes. As appellant and Priest remained in their vehicles in the middle lane of a three-lane road, another motorist, Michael Foster, driving in the far right lane, approached the collision scene. Foster testified that he "let [appellant] out" of the middle lane, because he "figured [Priest and appellant] [were] going to get off to the side of the road and exchange insurance information." Instead of pulling over to the side of the road, appellant rapidly drove away from the collision scene without checking to see if Priest was injured or identifying herself to anyone. Appellant then drove onto the curb, swerved across all three lanes of traffic and into the far left lane. Foster witnessed appellant, within approximately "two blocks" of the Priest collision scene, make "a[n] abrupt right turn, trying to get up onto" the Chippenham Parkway entrance ramp. As she made this abrupt right turn, appellant drove over another curb and struck Ashokkumar Patel, a pedestrian, and continued onto the ramp without stopping. Patel died from blunt force injuries received as a result of being struck by appellant's

truck. Later that night, police located appellant's truck, and observed that it had a damaged headlight. Forensic evidence determined plastic headlight fragments found at the scene where Patel was struck to be consistent with materials from the broken headlight of appellant's truck.

Appellant was indicted for felony homicide, aggravated involuntary manslaughter, and two counts of felony hit-and-run. The trial court denied appellant's pre-trial motion to require the Commonwealth to prosecute her either for felony homicide or aggravated involuntary manslaughter, but not both. Appellant argued that to convict and punish her for both homicide charges would violate the double jeopardy prohibition under the United States and Virginia Constitutions.[1]

The jury convicted appellant of both homicide offenses. She was sentenced to twenty years imprisonment for each of those convictions. The trial court denied her motion to vacate the conviction and sentence imposed for aggravated involuntary manslaughter.

This appeal followed.

## II.

On appeal, appellant contends the trial court erred in not vacating her conviction and sentence for aggravated involuntary manslaughter, arguing that to punish her twice for causing the death of a single victim violated the double jeopardy provision of the United States Constitution. On appeal, we apply a *de novo* standard of review in determining whether cumulative punishments imposed in a single trial violate the constitutional prohibition against double jeopardy. Dalo v. Commonwealth, 37 Va. App. 156, 164-65, 554 S.E.2d 705, 709 (2001), aff'd, 264 Va. 431, 570 S.E.2d 840 (2002). *De novo* review is appropriate, because although determining legislative intent is a "factual inquiry," Garrett v. United States, 471 U.S.

---

[1] "Virginia's constitutional guarantee against double jeopardy affords a defendant the same guarantees as the federal Double Jeopardy Clause." Stephens v. Commonwealth, 263 Va. 58, 62, 557 S.E.2d 227, 230 (2002).

773, 779 (1985), our determination of whether the legislature intended to impose cumulative punishments "involves an examination of the offenses 'in the abstract, rather than with reference to the facts of the particular case under review.'" <u>Dalo</u>, 37 Va. App. at 164-65, 554 S.E.2d at 709 (quoting <u>Blythe v. Commonwealth</u>, 222 Va. 722, 726, 284 S.E.2d 796, 798 (1981)).

When multiple convictions in a single trial arise out of the same course of conduct, "'the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.'" <u>Coleman v. Commonwealth</u>, 261 Va. 196, 199-200, 539 S.E.2d 732, 734 (2001) (quoting <u>Payne v. Commonwealth</u>, 257 Va. 216, 227, 509 S.E.2d 293, 300 (1999)). Where a legislature intends to impose multiple punishments for the same course of conduct, the imposition of multiple punishments does not violate the Constitution. <u>Missouri v. Hunter</u>, 459 U.S. 359, 366-68 (1983); <u>Albernaz v. United States</u>, 450 U.S. 333, 344 (1981). If "'the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each [offense charged] requires proof of an additional fact which the other does not.'" <u>Coleman</u>, 261 Va. at 200, 539 S.E.2d at 734 (quoting <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932)) (alteration in original).

Applying the test established in <u>Blockburger</u>, we consider whether the trial court erred in its determination that the General Assembly intended to impose multiple punishments on an individual who violates, in a single course of conduct, Code §§ 18.2-33, felony homicide, and 18.2-36.1(B), aggravated involuntary manslaughter, when that conduct results in the death of a single victim.

"The assumption underlying the [<u>Blockburger</u>] rule is that [the legislature] ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative

punishments . . . ." Whalen v. United States, 445 U.S. 684, 691-92 (1980). On the other hand, where the statutes at issue punish separate offenses arising out of the same course of conduct, demonstrating a legislative intent to authorize cumulative punishments, imposition of separate punishments for each offense does not offend the double jeopardy prohibition against multiple punishments. Id. In applying the Blockburger rule, we consider "the offenses charged in the abstract, without referring to the particular facts of the case under review." Coleman, 261 Va. at 200, 539 S.E.2d at 734 (citing Blythe, 222 Va. at 726-27, 284 S.E.2d at 798-99).

A conviction under Code § 18.2-33, felony homicide, punishable as second-degree murder, requires proof that the accused unintentionally killed a person "while in the prosecution of some felonious act other than those specified in [Code] §§ 18.2-31 and 18.2-32."[2] A conviction under Code § 18.2-36.1(B), aggravated involuntary manslaughter, however, requires proof that the accused unintentionally caused the death of a person while "driving under the influence" of an intoxicant and that her conduct was "so gross, wanton, and culpable as to show a reckless disregard for human life." Clearly, each offense requires proof of a fact which the other does not. The felony homicide statute, Code § 18.2-33, unlike the aggravated involuntary manslaughter statute, requires proof that the defendant was engaged in a felonious act at the time of the unintended killing. The aggravated involuntary manslaughter statute, Code § 18.2-36.1(B), unlike the felony homicide statute, requires proof that the defendant caused a death because she drove, while intoxicated, in a manner so gross and culpable as to demonstrate a reckless disregard for human life. Accordingly, the statutory offenses of felony homicide and aggravated involuntary manslaughter are separate statutory offenses under Blockburger, and

---

[2] Code § 18.2-31 defines the offenses that constitute capital murder. Code § 18.2-32 defines first-degree murder and includes the predicate offenses for first-degree felony murder.

authorize the imposition of cumulative punishments for a single course of conduct that violated each statute.

Appellant contends that even though felony homicide and aggravated involuntary manslaughter are separate offenses under the Blockburger test, her punishment under both statutes nonetheless violated the constitutional prohibition against double jeopardy because only one homicide occurred. She argues that her convictions under each statute "focus[ed]" on the death of Patel and that punishing her twice for causing Patel's death subjected her to multiple punishments prohibited under the Double Jeopardy Clauses of the United States and Virginia Constitutions. We disagree.

Appellant argues "there is no prior example in Virginia of a defendant being sentenced to a greater number of homicide charges than there were victims," citing Clagett v. Commonwealth, 252 Va. 79, 472 S.E.2d 263 (1996) (holding that imposing five death sentences for four homicides in a single trial violated the double jeopardy multiple punishment prohibition, as an "accused cannot be subjected to more than one conviction and punishment for each discrete criminal act"). Subsequent to its decision in Clagett, the Supreme Court expressly considered "whether there can be more than one [conviction and] death sentence imposed when there is only one victim." Payne, 257 Va. at 227, 509 S.E.2d at 300. In Payne, the Court held that an accused's convictions of more than one offense of capital murder of the same victim, and the imposition of a death sentence for each conviction, did not violate the double jeopardy prohibition against multiple punishments. It concluded that each of the two offenses for which the accused stood convicted, capital murder during the commission of rape and capital murder during the commission of robbery of the same victim, was a separate offense under the Blockburger test. Payne, 257 Va. at 228-29, 509 S.E.2d at 300-01. It further concluded that the imposition of punishment for each offense did not violate the double jeopardy prohibition. Id.

- 6 -

In Winston v. Commonwealth, 268 Va. 564, 614-15, 604 S.E.2d 21, 49-50 (2004), the Supreme Court reiterated its holding in Payne that an accused's conviction of more than one offense of capital murder of the same victim, and the imposition of a death sentence for each conviction, did not violate the double jeopardy prohibition.

Here, the jury determined that appellant committed two separate criminal offenses when she fatally struck Patel. It found that appellant was engaged in a felony hit-and-run when she fatally struck Patel approximately "two blocks" from the Priest collision scene. The jury also found that appellant was driving while intoxicated and in a manner "so gross, wanton, and culpable as to show a reckless disregard for human life" when she struck and killed Patel. Code § 18.2-36.1(B).

While the separate criminal offenses each resulted in the death of a single victim, the convictions and punishments imposed did not violate the constitutional prohibition against double jeopardy. See Payne, 257 Va. at 227-29, 509 S.E.2d at 300-01.

### III.

Appellant finally contends that, nothwithstanding binding precedent established by the United States Supreme Court in Blockburger and Hunter, and by the Virginia Supreme Court in Payne and Winston, convicting and sentencing her for two separate offenses for causing the death of the same victim is unconstitutional. Appellant on brief cites no authority for this argument, and we are aware of none. Accordingly, we find her contention to be without merit. See Rule 5A:20.

### IV.

We conclude the trial court did not err in finding that appellant's two convictions and punishments for causing the death of a single victim resulting from the violation of two separate and distinct statutory provisions, each of which authorized a separate statutory punishment, do

not violate the constitutional guarantee of the protection against multiple punishments provision of the Double Jeopardy Clause of the United States or Virginia Constitutions.  Accordingly, we hold that the trial court did not err in refusing to vacate appellant's conviction and sentence imposed for the aggravated involuntary manslaughter of Patel.

For these reasons, we affirm appellant's convictions.

<u>Affirmed.</u>