PRESENT:  Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Carrico, S.J.


KELLY DINELLE PAYNE
                                           OPINION BY
v.   Record No.  081258           JUSTICE S. BERNARD GOODWYN
                                           APRIL 17, 2009
COMMONWEALTH OF VIRGINIA


              FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, the primary issue is whether a criminal

defendant can be convicted and punished for both felony homicide

and aggravated involuntary manslaughter when the defendant

killed one victim.

     In the Circuit Court of the City of Richmond, Kelly D.

Payne was charged with felony homicide in violation of Code

§ 18.2-33, aggravated involuntary manslaughter in violation of

Code § 18.2-36.1, and two counts of felony "hit and run" in

violation of Code § 46.2-894.  Prior to trial, Payne filed a

motion to compel the Commonwealth to pursue prosecution either

under felony homicide or aggravated involuntary manslaughter.

The trial court denied the motion.

     Following a jury trial, Payne was found guilty on all

charges.  Payne appealed to the Court of Appeals.  In a

published opinion, Payne v. Commonwealth, 52 Va. App. 120, 661

S.E.2d 513 (2008), the Court of Appeals affirmed the judgment of

the trial court.  Payne appeals.

FACTS

At approximately 9:30 a.m. on March 7, 2006, Payne arrived at her place of employment, Auto Pawn of America (Auto Pawn), located on Midlothian Turnpike in Richmond. She drove her boyfriend's white pick-up truck to work. Payne's supervisor, Kevin Penrose, testified that Payne arrived at work with the smell of alcohol on her breath.

Auto Pawn was equipped with video surveillance equipment, and the Commonwealth presented a portion of the video surveillance recording from the day of the accident as evidence. The video recording showed Payne at various times during the workday holding a bottle of Crown Royal whiskey. The video recording also showed Payne drinking from a clear plastic cup, which contained a brown liquid.

Payne's co-worker, Steve Messner, testified that he observed Payne with a bottle of Crown Royal whiskey from the office freezer and also observed her with the bottle in one hand and a cup in the other hand. Although Messner did not see Payne drink from the Crown Royal whiskey bottle, he saw her drinking from the plastic cup throughout the entire day. Both Messner and Penrose testified that Payne's behavior changed during the day; they testified that she became flirtatious. Due to her "irrational and erratic" behavior, Penrose asked Payne to leave work early. As she was leaving work, which was approximately

4:00 p.m., Messner attempted to stop Payne by yelling her name; however, she ignored him and "shot across" the road nearly striking another vehicle in the parking lot.

Thereafter, Penrose discovered that approximately one third of the whiskey was missing from his Crown Royal whiskey bottle that he kept in the office freezer. Shortly after Payne left Auto Pawn, she drove her vehicle into the back of a car that was stopped at a red light. The driver of that car, Ruth Ann Priest, testified that the truck driven by Payne "slammed" into her car, and after the collision, Priest was bleeding and felt dazed, dizzy, and lightheaded. Priest did not get out of the car. However, she looked in her rear-view mirror and saw the driver of the truck was a woman with sunglasses down around her face who appeared "dazed" and "lethargic." Priest called 911 and remained in her car. Approximately four minutes after the collision and while Priest was on the telephone with the 911 operator, Payne drove away from the scene of the accident. Priest later drove herself to a medical clinic where she was diagnosed with a neck sprain.

Michael Foster testified that he saw someone driving away from the location of the accident with Priest in a white pick-up truck, which he identified as the truck Payne was driving. Foster followed the truck and observed the driver drive onto the curb. He further observed the driver swerve across all three

3

lanes of traffic and make an abrupt right turn.  The driver then drove the truck back onto the curb striking a pedestrian, Ashokkumar M. Patel.  Foster called 911 and reported the accident stating that the driver, later identified as Payne, was "driving like a maniac."  Payne did not stop the truck after hitting Patel; she continued onto Chippenham Parkway.  Patel later died from his injuries.

At approximately 4:30 p.m., Payne arrived at the Forest Restaurant, which is about ten minutes by car from the intersection where Patel was struck.  Frances Laney, a waitress at the restaurant, testified that Payne "seemed fine" when she first arrived, and she served her a beer and a sandwich.  Laney conceded that she did not observe Payne walk into the restaurant because Laney was in the kitchen at that time.  Laney testified that Payne appeared intoxicated after she made "a mess" of her sandwich; other customers informed her that Payne had ingested pills.

After Laney testified, Payne's counsel moved for a mistrial, arguing that Laney's testimony was exculpatory evidence that was not disclosed by the Commonwealth prior to trial.  The trial court denied the motion.

The Commonwealth introduced into evidence at trial a transcript of a telephone call that Payne placed while she was an inmate at the Richmond City Jail.  During the telephone

4

conversation, Payne stated that she was "doing shots" of liquor during the day of her accident. She also stated that she was an alcoholic and that she had previously attended Alcoholics Anonymous meetings.

The Commonwealth presented Dr. Julia Pearson, a toxicologist, to testify concerning the effects of alcohol and the ability of alcoholics to conceal those effects. Payne's counsel objected to the expert testimony, arguing that the Commonwealth had failed to lay a proper foundation for the testimony. The trial court overruled the objection, but excluded expert testimony regarding general information concerning intoxication and limited Dr. Pearson's testimony to the effects of alcohol on an alcoholic. Dr. Pearson testified that alcoholics are able to mask the effects of alcohol on their psychomotor skills but not on their cognitive skills, such as their judgment and reasoning.

Payne did not present any evidence. The jury found Payne guilty of felony homicide, aggravated involuntary manslaughter, and two counts of felony "hit and run", and sentenced her to a total of 46 years in prison. Payne filed a post-trial motion, arguing that her sentences for both felony homicide and aggravated involuntary manslaughter violated the prohibition against double jeopardy. Payne also filed a motion for a new trial, arguing that the Commonwealth had failed to disclose

5

exculpatory evidence prior to trial. The trial court conducted a hearing and denied the motions.

Payne appealed to the Court of Appeals, which granted her petition as to her assignment of error concerning double jeopardy. In a published opinion, the Court of Appeals affirmed Payne's conviction holding that the legislature intended to impose multiple punishments. Id. at 129, 661 S.E.2d at 517.

ANALYSIS

Payne contends that the trial court erred in convicting her for both felony murder and aggravated involuntary manslaughter. Payne argues that pursuant to Code § 18.2-36.1(C), the legislature has authorized prosecution under that vehicular manslaughter statute and any other homicide statute, but not for a common law homicide offense. She contends that felony homicide is a common law offense and, thus, Code § 18.2-36.1(C) does not authorize prosecution of felony homicide in addition to vehicular aggravated involuntary manslaughter. Additionally, Payne contends it is a violation of the double jeopardy provision of the Fifth Amendment to the United States Constitution to convict and sentence her twice for killing a single person.

The Commonwealth responds that the language in Code § 18.2-36.1(C) supports and proves that the legislature intended multiple punishments in this instance. The Commonwealth further

6

states that convictions under felony murder and aggravated involuntary manslaughter require proof of different elements, and do not violate the prohibition against double jeopardy. We agree with the Commonwealth.

Resolution of the issue concerning whether the multiple punishments imposed upon the defendant are proper requires a determination of what punishments the legislature intended to impose. In making such a determination, we must first examine the statutes under which the defendant was convicted.

Code § 18.2-36.1 provides as follows:

A. Any person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 or any local ordinance substantially similar thereto unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.

B. If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter, a felony punishable by a term of imprisonment of not less than one nor more than 20 years, one year of which shall be a mandatory minimum term of imprisonment.

C. The provisions of this section shall not preclude prosecution under any other homicide statute. This section shall not preclude any other revocation or suspension required by law. The driver's license of any person convicted under this section shall be revoked pursuant to subsection B of § 46.2-391.

Code § 18.2-33, entitled "Felony homicide defined; punishment," provides as follows:

The killing of one accidentally, contrary to the intention of the parties, while in the prosecution of some felonious act other than those specified in §§ 18.2-31 and 18.2-32 is murder of the second degree and is punishable by confinement in a state correctional facility for not less than five years nor more than forty years.

This Court must determine the General Assembly's intent from the words contained in the statutes. Washington v. Commonwealth, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006). Clearly, the language in Code § 18.2-36.1(C) stating that "[t]he provisions of this section shall not preclude prosecution under any other homicide statute" expresses the legislative intent for multiple punishments. Code § 18.2-36.1(C) does not make an exception for a prosecution under a statute that was previously a common law crime. Code § 18.2-33 is a homicide statute; it defines the elements and states the punishment for felony homicide. Code § 18.2-36.1(C) specifically states that prosecution for aggravated involuntary manslaughter does not preclude prosecution under another homicide statute such as Code § 18.2-33.

We next must discern whether the convictions and punishments for aggravated involuntary manslaughter and felony murder, which both stem from the death of one victim, violate the double jeopardy provision of the Fifth Amendment to the United States Constitution. In pertinent part, this amendment provides that "[n]o person shall . . . be subject for the same

8

offense to be twice put in jeopardy of life and limb." U.S. Const. amend. V. "This constitutional provision guarantees protection against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." Payne v. Commonwealth, 257 Va. 216, 227, 509 S.E.2d 293, 300 (1999). In a case where both of the defendant's convictions occurred in a single trial, the only relevant constitutional guarantee is protection against multiple punishments for the same offense. Blythe v. Commonwealth, 222 Va. 722, 725, 284 S.E.2d 796, 797-98 (1981).

It is clear from the face of the statutes that the General Assembly intended to create two distinct offenses, aggravated involuntary manslaughter and felony homicide, which Payne violated by her actions. Thus, we must consider the rule set forth in Blockburger v. United States, 284 U.S. 299, 304 (1932), that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." See Payne, 257 Va. at 228, 509 S.E.2d at 300. In this case, each offense requires proof of an element that the other does not. The felony homicide statute requires the Commonwealth to prove that the defendant unintentionally caused the death of

another, while in the prosecution of a felonious act.  Code § 18.2-33.  The aggravated involuntary manslaughter statute requires the Commonwealth to prove that the defendant was driving under the influence of intoxicants, unintentionally caused the death of another, and engaged in conduct that was "so gross, wanton, and culpable as to show a reckless disregard for human life."  Code § 18.2-36.1(B).

To convict under the felony homicide statute, the Commonwealth must prove that the defendant committed the killing in the commission of a felonious act; however, the Commonwealth is not required to prove any level of intoxication or recklessness.  To convict under the aggravated involuntary manslaughter statute, the Commonwealth must prove intoxication and recklessness; however, the Commonwealth is not required to prove that the defendant committed the killing in the commission of a felonious act.

Each offense requires proof of an element that the other does not.  We hold that aggravated involuntary manslaughter, Code § 18.2-36.1, and felony homicide, Code § 18.2-33, are different offenses under the Blockburger test.  The General Assembly intended that each statutory offense be punished separately, and Payne's convictions and punishments do not violate the constitutional guarantee of protection against multiple punishments for the same offense.

10

Payne also assigns error to the trial court's refusal to grant her motion for a new trial on the grounds that the Commonwealth failed to produce exculpatory evidence to the defense prior to trial, in violation of Brady v. Maryland, 373 U.S. 83 (1963).  Specifically, Payne argues that the Commonwealth failed to disclose Laney's testimony that Payne did not appear intoxicated when initially arriving at the restaurant, and that it was only after other customers informed Laney that Payne had taken some pills that Laney noticed Payne was intoxicated.  The Commonwealth contends that it was not required to disclose such evidence because the evidence is not exculpatory and Payne was aware that she went to the restaurant, that she ingested pills, and that there were other people in the restaurant that may have observed her behavior.  The Commonwealth further asserts that the evidence was not material for purposes of Brady.

In Brady, 373 U.S. at 87, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  The defendant's due process rights have been violated if he does not receive such evidence or if he receives the evidence at a point when he cannot effectively use it.  Bowman v. Commonwealth, 248 Va. 130,

11

133, 445 S.E.2d 110, 111 (1994). "Exculpatory evidence is material if there is a reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. A 'reasonable probability' is one which is sufficient to undermine confidence in the outcome of the proceeding." Id. at 133, 445 S.E.2d at 112.

Assuming, without deciding, that Laney's testimony was exculpatory, it was not material because there is no reasonable probability that pretrial disclosure of Laney's testimony would have resulted in a different outcome. Payne was charged with killing Patel while driving under the influence, and evidence that she ingested pills after the accident was not relevant to her level of intoxication at the time she hit Patel. The Commonwealth presented overwhelming evidence that Payne was intoxicated before she killed Patel. Payne smelled of alcohol when she arrived at work, and there was testimony and a video recording depicting Payne's behavior at work as "erratic." The videotape showed Payne holding a Crown Royal whiskey bottle and a cup. After she left work, one third of the Crown Royal whiskey was missing, and the jury could have inferred she drank it. An eyewitness reported that Payne was "driving like a maniac" right before and right after she hit Patel. Additionally, during a telephone call Payne placed from jail, Payne admitted that she was "doing shots" of liquor the entire

12

day of her accident.  Thus, there is not a reasonable probability that the outcome of the trial would have been different had the Commonwealth disclosed Laney's testimony pretrial, and denial of Payne's motion for a new trial was not erroneous.

Payne also argues that the trial court erred in allowing expert testimony concerning general information of intoxication. The Commonwealth asserts the expert testimony concerned the behavior of alcoholics and that a proper foundation was laid by introducing the telephone call where Payne admitted she was an alcoholic and that she attended Alcoholics Anonymous meetings.

A trial court's admission of expert testimony is in the sound discretion of the trial court.  Commonwealth v. Miller, 273 Va. 540, 549, 643 S.E.2d 208, 213 (2007).  Expert testimony is admissible when it concerns matters not within the ordinary knowledge of the jury.  Compton v. Commonwealth, 219 Va. 716, 726, 250 S.E.2d 749, 755-56 (1979).  The purpose of expert testimony is to assist the trier of fact in understanding the evidence.  Velazquez v. Commonwealth, 263 Va. 95, 103, 557 S.E.2d 213, 218 (2002).  In addition, expert testimony must be based on an adequate foundation; "expert testimony is inadmissible if it is founded on assumptions that have an insufficient factual basis."  Keesee v. Donigan, 259 Va. 157, 161, 524 S.E.2d 645, 647-48 (2000).

In this case, the trial court specifically excluded expert testimony regarding general information concerning intoxication and limited the expert's testimony to that concerning how alcoholics are able to conceal certain effects of alcohol. The Commonwealth had previously introduced the transcript of Payne's telephone conversation when she admitted that she was an alcoholic and attended Alcoholics Anonymous meetings. Dr. Pearson's testimony concerning how an alcoholic may be able to mask certain symptoms of intoxication was not within the ordinary knowledge of a layperson, and it assisted the jury in understanding why Payne may not have appeared drunk at times. We hold that the expert testimony was based on an adequate foundation and that the trial court did not abuse its discretion in admitting such expert testimony.

Payne further contends that the evidence was insufficient to support her convictions for aggravated involuntary manslaughter, felony murder, and the felony "hit and run" involving Priest. Regarding the aggravated involuntary manslaughter conviction, Payne argues that the evidence was insufficient to prove that she was intoxicated at the time she hit Patel. Payne asserts that this Court should reverse her conviction for the felony "hit and run" involving Priest because the evidence was insufficient to prove that Payne knew or should have known that the collision resulted in an injury.

14

Consequently, as that conviction was the predicate felony for the conviction of felony murder, Payne argues that her conviction for felony murder should be reversed also.

When a defendant challenges the sufficiency of the evidence on appeal, this Court reviews the evidence in the light most favorable to the Commonwealth and will reverse the judgment of the trial court only if it is plainly wrong or without evidentiary support. Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009). We hold that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support Payne's convictions.

The Commonwealth presented sufficient evidence that Payne was intoxicated prior to hitting Patel to support her conviction of aggravated involuntary manslaughter. Her employer smelled alcohol on her breath, and Payne was asked to leave work early because of her "irrational and erratic" behavior. After she left work, whiskey kept there was found to be missing. Payne admitted that she was "doing shots" of liquor the entire day of her accident, and immediately before and after Payne hit Patel, an eyewitness observed Payne driving erratically. Thus, the Commonwealth presented sufficient evidence to support the trial court's finding that Payne was intoxicated when she hit Patel, and, accordingly, Payne's conviction for aggravated involuntary manslaughter is affirmed.

15

Payne was also convicted of felony "hit and run" under Code

§ 46.2-894, which provides in part:

> The driver of any vehicle involved in an accident in which a person is killed or injured or in which an attended vehicle or other attended property is damaged shall immediately stop as close to the scene of the accident as possible . . . .
>
>     . . . .
>
> Any person convicted of a violation of this section is guilty of (i) a Class 5 felony if the accident results in injury to or the death of any person . . . .

In addressing a predecessor statute to Code § 46.2-894, this

Court stated the following in regards to the elements of the

crime of "hit and run":

> Knowledge necessarily is an essential element of the crime. This does not mean that the person should have positive knowledge of the extent of the damage or injuries inflicted. It does mean that, in order to be guilty of violating the statute, "the driver must be aware that harm has been done; it must be present in his mind that there has been an injury; and then, with that in his mind, he must deliberately go away without making himself known. If an injury is inflicted under such circumstances as would ordinarily superinduce the belief in a reasonable person that injury would flow, or had flowed, from the accident or collision, then it is the duty of the operator to stop his vehicle."

Herchenbach v. Commonwealth, 185 Va. 217, 220, 38 S.E.2d 328,

329 (1946).  "[T]he Commonwealth must prove that the defendant

possessed actual knowledge of the occurrence of the accident,

and such knowledge of injury which would be attributed to a

16

reasonable person under the circumstances of the case." Kil v. Commonwealth, 12 Va. App. 802, 811, 407 S.E.2d 674, 679 (1991).

In this case, there was evidence that Payne knew or should have known that Priest was injured during the collision. Priest testified that Payne "slammed" into the back of Priest's car and the collision "jerked [Priest] forward pretty hard." The collision left Priest "bleeding," "dazed," "dizzy," "light headed" and resulted in a sprained neck. Further, the collision caused Payne's glasses to fall down around her face and left Payne sitting in her vehicle "dazed" and "lethargic." Payne was clearly aware of the extent of the accident as the collision was significant enough that Payne waited at the accident scene for over four minutes before deciding to flee. During the time Payne was at the scene after the collision, Payne never went to Priest's vehicle to check on her injury status, even though Priest remained in her vehicle. Thus, the evidence was sufficient to support a finding that Payne knew of the collision, and knew or should have known of Priest's injury, and, accordingly, Payne's conviction for the felony "hit and run" involving Priest is affirmed. Consequently, Payne's argument that the circuit court erred in finding her guilty of felony murder because there was insufficient evidence to prove she was guilty of felony "hit and run" in the accident involving Priest must fail.

17

For these reasons, the judgment of the Court of Appeals is affirmed.

Affirmed.