COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Chafin, O'Brien and Russell
Argued at Salem, Virginia


SCOTT CHRISTMAN MILES, A/K/A
 SCOTT CHRISSMAN MILES, A/K/A
 SCOTT CRISSMAN MILES

                                                  MEMORANDUM OPINION[*] BY
v.       Record No. 1879-14-3                     JUDGE MARY GRACE O'BRIEN
                                                  MARCH 22, 2016

COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                              F. Patrick Yeatts, Judge

         William F. Quillian III (William F. Quillian III, P.C., on brief), for
         appellant.

         Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
         Attorney General, on brief), for appellee.


        Following a jury trial, Scott C. Miles ("appellant") was convicted of felony murder, in

violation of Code § 18.2-30. He was sentenced to thirty-five years of incarceration. On appeal,

appellant assigns the following error to the decision of the trial court:

         When an alleged crime scene analysis expert testified basically as to
         facts that the average juror could understand and evaluate and actually
         created a profile tending to direct suspicion upon the defendant, such
         evidence is innately inadmissible and inherently prejudicial when
         allowed into evidence and the trial court erred in allowing such to be
         heard.

For the following reasons, we affirm the trial court's ruling.

                                        I. BACKGROUND

        The victim, eighty-six-year-old Lynda Slocum, lived alone in Lynchburg, Virginia. On

December 20, 2012, a neighbor became concerned when Slocum's garbage can was still at the

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

curb at lunchtime; the neighbor called the police to check on Slocum. The responding officers found broken glass inside the residence from the windowpane of a basement door leading to the outside. The victim's body was discovered upstairs, in a chair in her den. She had a blanket wrapped around her head, and a magazine rack on her chest, hiding her face from view. Other than the broken glass from the basement door and a few dresser drawers overturned on a bed, nothing appeared to be disturbed or taken from the home. A checkbook, U.S. currency, and boxes of unused checks were found in the den, and the victim was wearing her wedding and engagement rings when she was found.

The medical examiner who performed the autopsy found that Slocum suffered a broken neck, a severed spinal column, a crushed chest, a broken breastbone, multiple broken ribs, and numerous abrasions and contusions to her head and body. Her injuries were so severe that only the soft tissue of her skin and some of the structures of her front neck area were keeping her head attached to her body. The doctor described the injuries as something she would have expected to see as a result of a high speed motor collision, a plane crash, or someone jumping from a tall building.

Appellant had been married to Slocum's daughter since 1989. He and his wife had resided in Lynchburg with Slocum for a period of time in 2011. The couple separated in July of 2012, due, in part, to appellant's heroin use. At the time of the offense, appellant was living in Richmond, Virginia.

In the past, Slocum had provided appellant with financial support to attend community college. At the time of the murder, however, appellant was out of work and was defaulting on his mortgage. Slocum was no longer giving him any money.

At trial, the Commonwealth presented evidence that appellant was seen in Lynchburg on the night of December 19, 2012. He drove a friend's son, Kentrell McCoy, from Lynchburg to

Richmond that night. McCoy testified that appellant seemed "anxious, jittery," as if he was "trying to get out of Lynchburg."

The day after Slocum's body was found, Detective J.T. Loyd of the Lynchburg Police Department interviewed appellant. Appellant told Loyd that the last time he had been in Lynchburg was "a month or so" before the detective interviewed him. He later acknowledged that he had lied to the detective, but he said that the last time he was at Slocum's home was in April of 2012.

Ronald Dolan, an inmate who was incarcerated with appellant before trial, testified that appellant confessed to him. According to Dolan, appellant told him that he went to his mother-in-law's house to ask for money, but she told him "she wasn't giving him any more money, she was cutting him off." Appellant told Dolan that he "let [the victim] have it" and "let the investigators think that it looked like a random robbery."

Prior to trial, the Commonwealth filed a motion *in limine* to admit the expert testimony of Michael Napier, a retired FBI special agent. The Commonwealth asked the court to accept Napier as an expert in violent crime scene analysis. The Commonwealth anticipated showing the jury that the crime scene was "inconsistent with an actual burglary taking place versus a scene that's indicative of being staged." Despite the Commonwealth's stipulation that Napier was not going to offer any opinion as to who committed the crime, or offer a "profile" of the perpetrator, appellant objected. The court granted the Commonwealth's motion, subject to the witness being properly qualified as an expert.

At trial, Napier testified that he had been an FBI agent for nearly twenty-eight years and had worked specifically in crime scene analysis since 1985. He explained his background, experience, and training in crime scene analysis. The court found that Napier's testimony met

"the standard set forth in Rule 2:702," and qualified him as an expert in violent crime analysis and violent crime scene analysis.

Napier explained the procedures he used to evaluate the crime scene, including a study of the victim and her lifestyle, analysis of the forensic evidence and the degree of violence evident in the crime, and whether the crime scene appeared to be staged. In the present case, Napier noted there were extreme injuries inflicted on the victim, which he referred to as "fatality excessive violence" or "overkill," and he observed that the victim's face was covered. He referred to the fact that there was "not much disturbance" in the crime scene and that valuable items that could have been taken were untouched, which "speaks to motive."

Napier testified that based on his training and experience, his review of the case led him to conclude that it did not "comport with a home invasion" and that the crime scene had been "staged." He explained to the jury that "staging" is when "a person purposefully chang[es] the crime scene and things within the crime scene for the purpose of misleading the police, trying to point them in one direction when where they need to be is focusing in another direction."

He testified that in addition to the lack of disarray in the house, the distribution of the glass from the door window caused him to conclude that the scene was staged. A glass pane had been shattered and fragments were located on the floor inside the residence. Napier's attention was drawn to a seal at the bottom of the door that kept "water out and . . . [was] snug to the floor." Based on the size and location of the glass fragments, Napier concluded that the windowpane was not broken to gain entry to the residence, but in fact the door had "been opened full; that is, it went from the opening all the way around to where it was even with the hinges[] as an indicator that that's not the way someone would enter secretly. You wouldn't throw the door open." Additionally, he stated that "the distribution of the glass was troubling . . . . The size of the glass wouldn't have allowed it to—wouldn't allow the door to pass over it. So it would have

- 4 -

to be distributed as the door swung open." Based on his conclusions from the crime scene and the physical evidence, Napier opined that Slocum was not murdered during the course of a home invasion.

At the conclusion of the case, appellant was found guilty of felony murder, in violation of Code § 18.2-30, and was sentenced to thirty-five years of incarceration in the state penitentiary. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

The "admission of expert testimony is in the sound discretion of the trial court." Payne v. Commonwealth, 277 Va. 531, 542, 674 S.E.2d 835, 841 (2009). The trial court has a "range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." Lawlor v. Commonwealth, 285 Va. 187, 212-13, 738 S.E.2d 847, 861 (2013) (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011)). We have held that this exercise of discretion by the trial court is awarded appellate deference despite the fact that "for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet [the decisions] still remain entirely reasonable." Thomas v. Commonwealth, 62 Va. App. 104, 111, 742 S.E.2d 403, 407 (2013) (quoting Hamad v. Hamad, 61 Va. App. 593, 607, 739 S.E.2d 232, 239 (2013)).

### B. Assignment of Error: Expert Witness Testimony

Appellant contends that the trial court abused its discretion when it allowed Napier to testify "to facts that the average juror could understand and evaluate" and that the challenged testimony "went well beyond crime scene analysis" and "constituted 'profile' evidence that indicated that the homicide had been committed by Defendant and that he had staged the crime scene to mislead the police." According to appellant, Napier's testimony indicated that the

offender knew the victim, had some relationship with her, planned the homicide, and specifically targeted her. Appellant argues that Napier's testimony was therefore "profile" evidence and was not properly admitted under the guise of expert testimony.

"'Expert testimony is admissible when it concerns matters not within the ordinary knowledge of the jury' such that it may assist the jury's understanding of the evidence presented." Dowdy v. Commonwealth, 278 Va. 577, 600, 686 S.E.2d 710, 723 (2009) (quoting Payne, 277 Va. at 542, 674 S.E.2d at 841). Napier was qualified as an expert in "violent crime analysis" and "violent crime scene analysis." He was not offered as an expert in criminal profiling and did not testify regarding a profile of the perpetrator.

Under Virginia Rule of Evidence 2:702, an expert may testify as to his opinion if he is qualified by virtue of "knowledge, skill, experience, training, or education." Additionally, in criminal cases, Rule 2:702 provides that an expert may testify if "the court finds that the subject matter is beyond the knowledge and experience of ordinary persons, such that the jury needs expert opinion in order to comprehend the subject matter, form an intelligent opinion, and draw its conclusions."

The Supreme Court of Virginia considered this very issue in Compton v. Commonwealth, 219 Va. 716, 250 S.E.2d 749 (1979). In Compton, the Court affirmed the trial court's admission of an expert's testimony concerning blood spatter evidence. Id. at 727, 250 S.E.2d at 756. The witness explained the significance of the absence of gunpowder burns around the victim's wound, the absence of any pellets in the victim's body, and the spatter pattern and the volume of blood in various locations of the kitchen, where the shooting occurred. Id. The Court held that

> where "the jury, or the court trying a case without a jury, is confronted with issues which require scientific or specialized knowledge or experience in order to be properly understood, and which cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience gained in the

>              ordinary affairs of life [expert opinion and testimony are
>              admissible]."

Id. at 726, 250 S.E.2d at 755-56 (quoting 31 Am. Jur. 2d Expert and Opinion Evidence § 16,

p.511 (1967)). The Court noted that a proper foundation was laid for the expert's testimony and

the weight to be accorded to it was a matter for determination by the jury. Id. at 727, 250 S.E.2d

at 756.

Here, as in Compton, the expert witness, Napier, testified as to matters outside the scope

or knowledge of an average juror. He explained that the apparent disarray in the victim's house

was, in fact, "not much disturbance," and the severe trauma to the victim and the way her face

was covered after the attack indicated that she was a targeted victim. He concluded that the

scene did not "comport with a home invasion."

Most significantly, based on his training and experience, Napier was able to explain the

importance of the location of the broken glass near the basement door. Napier's testimony

refuted any conclusion that because the glass on the door was broken and strewn about the floor,

entry was forced. He explained that the curtain on the inside of the window of the door would

have prevented most of the glass from hitting the ground. Additionally, he noted that the seal of

the bottom of the door was "snug to the floor," and if a burglar had gained entry to the home by

breaking the window glass, unlocking the door and walking through, much of the glass on the

floor would have been moved by the seal of the door. Napier's testimony provided context and

meaning to the crime scene photographs that were presented to the jury.

Furthermore, Napier's testimony did not constitute "profile evidence" of the perpetrator

of the crime. He did not opine as to the race, gender, or age of the suspect. His opinions were

limited to his examination of the crime scene and were based on his training and experience with

the FBI, specifically with crime scene analysis. The weight to be given to his testimony was a

matter for the jury. Compton, 219 Va. at 727, 250 S.E.2d at 756; see also Limbaugh v.

- 7 -

<u>Commonwealth</u>, 149 Va. 383, 393, 140 S.E. 133, 135 (1927) ("The jury [is] the sole judge[] of the credibility and weight of testimony.  If the evidence is relevant, it should be received, and the jury should be permitted to determine its credibility and weight.").

Napier's expertise was focused on the crime scene.  He offered a cogent explanation for why, in his opinion, an apparent burglary and home invasion through a basement door was actually staged.  Napier's testimony provided the jury with his specialized perspective of the crime scene and the victim, not a suggestion of the profile of the perpetrator.  We find that the court did not err in allowing his expert testimony.

## III.  CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

<u>Affirmed.</u>