COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank, Humphreys, Kelsey, Petty, Beales, Alston,
           McCullough, Huff, Chafin and Decker
Argued at Richmond, Virginia

**PUBLISHED**

JONATHAN MARQUIS HOLLEY

v.      Record No. 0939-13-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE STEPHEN R. McCULLOUGH
DECEMBER 23, 2014

UPON A HEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

Dianne G. Ringer (Bierowicz & Ringer, P.C., on briefs), for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General; Katherine Quinlan Adelfio, Assistant
Attorney General, on briefs), for appellee.


Jonathan Marquis Holley argues that the Double Jeopardy Clause precludes a conviction

and punishment for both second-degree murder and first-degree felony murder when there is only

one victim. We agree and reverse the lesser conviction of second-degree murder along with its

attendant conviction for use of a firearm in the commission of a felony.

BACKGROUND

Holley, with the help of an accomplice, burst into a residence in Portsmouth in the early

morning of January 27, 2010. The evidence suggests that the man inside the residence, Reginald J.

Buffington, Jr., was dealing drugs. Buffington defended himself, and a violent struggle ensued.

Buffington shot and wounded Holley, but Holley survived. Buffington was shot several times.

When police arrived at the scene, they found Holley lying on the floor, moaning and bleeding profusely. Buffington's lifeless body was leaning against a couch. He died of his gunshot wounds.

Holley was charged with both first-degree felony murder and second-degree murder. Holley was also charged with four counts of use of a firearm in the commission of a felony, abduction, armed statutory burglary, and possession of a firearm by a convicted felon. The trial court instructed the jury on both theories of murder and convicted Holley on both. Following the jury verdicts, defense counsel argued that appellant could not be sentenced for two separate murders when there was only one victim and that doing so would violate the Double Jeopardy Clause. Following additional briefing, the trial court sustained both convictions. This appeal followed.

ANALYSIS

Appellant argues that he cannot be convicted of both first-degree felony murder and second-degree murder when there is a single murder victim.[1] The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The constitutional prohibition against double jeopardy "had its origin in the three common-law pleas of *autrefois acquit, autrefois convict*, and pardon." United States v. Scott, 437 U.S. 82, 87 (1978). The constitutional right "derived from English common law, which followed then, as it does now, the relatively simple rule that a defendant has been put in jeopardy only when there has been a conviction or an acquittal — after a complete trial." Crist v. Bretz, 437 U.S. 28, 33 (1978). And while there are "an exceptionally large number of cases" interpreting the Double Jeopardy Clause, most of the leading United

---

[1] We reject the Commonwealth's contention, advanced at the en banc oral argument, that appellant did not rely on the common law at trial and, therefore, his argument is procedurally barred under Rule 5A:18. Appellant squarely raised the double jeopardy argument before the trial court in a written brief, and the Commonwealth filed a response. As we note below, double jeopardy principles chiefly derive from the common law. Accordingly, we are satisfied that the argument is not barred by Rule 5A:18.

States Supreme Court decisions "have found more guidance in the common-law ancestry of the Clause than in its brief text." Yeager v. United States, 557 U.S. 110, 117 (2009).

> It is now well recognized that this clause affords an accused three distinct constitutional guarantees. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."

Brown v. Commonwealth, 230 Va. 310, 312-13, 337 S.E.2d 711, 712-13 (1985) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). It is this last layer of protection we are called upon to examine. "We review *de novo* claims that multiple punishments have been imposed for the same offense in violation of the double jeopardy clause." Lawlor v. Commonwealth, 285 Va. 187, 227, 738 S.E.2d 847, 870 (2013).

## I. THE COMMON LAW'S UNITARY THEORY OF HOMICIDE

Common-law principles guide our decision. Although the common law of homicide contemplated "several stages of guilt, arising from the particular circumstances of mitigation or aggravation which attend it," 4 William Blackstone, Commentaries on the Laws of England 177 (facsimile ed. 1769), there could be but one homicide for one dead body, see, e.g., United States v. Ammidown, 497 F.2d 615, 625 (D.C. Cir. 1974) ("At common law, . . . [w]here there was but one killing, there was but one offense, and one act could therefore give rise to only one sentence.").

Due to the unitary nature of homicide at common law, an acquittal for murder barred a subsequent prosecution for manslaughter, and vice versa. See 4 Blackstone, Commentaries at 330 ("[A] conviction of manslaughter, on an appeal, is a bar even in another appeal, and much more in an indictment, of murder; for the fact prosecuted is the same in both, though the offences differ in colouring and in degree."); see also 2 Matthew Hale, Historia Placitorum Coronae: The History of the Pleas of the Crown 246 (P.R. Glazebrook ed., Prof'l Books Ltd. 1971) (1736)

("[I]f a man be acquit generally upon an indictment of murder, *auterfoits acquit* is a good plea to an indictment of manslaughter of the same person, or *è converso*, if he be indicted of manslaughter, and be acquit, he shall not be indicted for the same death, as murder, for they differ only in degree, and the fact is the same."). In short, under the common law of homicide, the units of prosecution are dead bodies, not theories of aggravation. If the common-law rule remains the law of Virginia, appellant cannot be convicted of two murders for a single killing.

Code § 1-200 provides that:

> [t]he common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly.

See also Herndon v. St. Mary's Hosp., Inc., 266 Va. 472, 476, 587 S.E.2d 567, 569 (2003) ("[A] statutory provision will not be held to change the common law unless the legislative intent to do so is plainly manifested."). The Commonwealth relies on statutory enactments to contend that the General Assembly has displaced the common law.

## II. STATUTORY ENACTMENTS HAVE NOT ALTERED THE COMMON LAW RULE.

### A. The enactment of Code § 18.2-32 and cases interpreting that statute do not establish any legislative intent to displace the common law.

First, the Commonwealth relies on Code § 18.2-32. That statute, as originally enacted in 1796, provided:

> The several offences which are included under the general denomination of murder, differ so greatly from each other in the degree of their atrociousness, that it is unjust to involve them in the same punishment: *Be it further enacted,* That all murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree, and the jury before whom any person indicted for murder shall be tried, shall, if they find

- 4 -

such person guilty thereof, ascertain in their verdict whether it be murder, in the first or second degree.

1796 Va. Acts ch. 2.

Code § 18.2-32, the direct descendant of the statute enacted in 1796, provides as follows:

Murder, other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate or animate object sexual penetration, robbery, burglary or abduction, except as provided in § 18.2-31, is murder of the first degree, punishable as a Class 2 felony.

All murder other than capital murder and murder in the first degree is murder of the second degree and is punishable by confinement in a state correctional facility for not less than five nor more than forty years.

The Commonwealth argues that this Court should employ the Blockburger test. Under that test, when "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each [offense charged] requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). "[I]n applying this test, the two offenses are to be examined in the abstract, rather than with reference to the facts of the particular case under review." Blythe v. Commonwealth, 222 Va. 722, 726, 284 S.E.2d 796, 798 (1981).

"Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165 (1977). Consequently, whether a punishment offends double jeopardy turns on a determination of "what punishments the Legislative Branch has authorized." Whalen v. United States, 445 U.S. 684, 688 (1980). In answering this question, we will "first consider whether 'the legislative intent is clear from the face of the statute or the legislative history.'" Andrews v.

- 5 -

Commonwealth, 280 Va. 231, 284, 699 S.E.2d 237, 267 (2010) (quoting Garrett v. United States, 471 U.S. 773, 779 (1985)).  "[T]he Blockburger rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history."  Garrett, 471 U.S. at 779.  As our Supreme Court has noted:

> [W]hile Blockburger can provide an efficient mechanism to parse statutory language in order to determine the legislature's intent with regard to whether multiple punishments are permitted for conduct chargeable under more than one code section, it is not the sole, or in many cases, the primary tool of statutory construction used to determine that intent.

Andrews, 280 Va. at 284, 699 S.E.2d at 267.

The legislative intent behind the passage of the statute that later became Code § 18.2-32 is clear.  In enacting this statute, the General Assembly did not intend to set aside the common-law rules for a single homicide's punishment by making that punishment *more* severe.  To the contrary, the General Assembly acted to *mitigate* the harshness of the common law's punishment for murder.  That intent appears in the language of the original enactment and in precedent interpreting this statute.  In adopting the predecessor to Code § 18.2-32, the General Assembly articulated its purpose, "The several offences which are included under the general denomination of murder, differ so greatly from each other in the degree of their atrociousness, that it is unjust to involve them in the same punishment."  1796 Va. Acts ch. 2.  In Fitzgerald v. Commonwealth, 223 Va. 615, 636, 292 S.E.2d 798, 810 (1982), the Supreme Court observed that the General Assembly enacted the predecessor to Code § 18.2-32 "to mitigate the harshness of the common law which punished murder and numerous other crimes with death."

Furthermore, in Wicks v. Commonwealth, 4 Va. (2 Va. Cas.) 387, 391-92 (1824), the Court concluded that, by enacting this statute,[2] the General Assembly did not intend "to change,

---

[2] Wicks involved 1 Rev. Code of 1819, ch. 171, § 2, at 616.  Its relevant language was nearly identical to that of 1796 Va. Acts ch. 2.

much less . . . to divide the Common Law crime of murder into two distinct offences, to be prosecuted and punished under two distinct Indictments." Rather, the General Assembly's intent was "to graduate the punishment of each murder by a scale to be established by itself, according to the circumstances under which it should be committed." Id. Several decades later, the Court reiterated its understanding that the purpose of this statute:

> [W]as *not to create two offences out of the crime of murder*, but to arrange the various kinds of murder at the common law, under the two denominations of murder in the first degree, and murder in the second degree; and to annex to the cases in each denomination a punishment corresponding in severity to the degree of atrocity with which they might be perpetrated, and by which they would be marked as belonging to the one or the other of said denominations of murder.

Livingston v. Commonwealth, 55 Va. (14 Gratt.) 592, 596 (1857) (emphasis added).

Our examination of the legislative intent behind the enactment of the statute that ultimately became Code § 18.2-32 leads us to conclude that the General Assembly did not intend to displace the common law's conception of homicide as a unitary crime with regard to murder and felony murder. Instead, the provision was enacted to *mitigate* the harshness of the common law's punishment for the crime of homicide. This clear legislative intent makes resort to the Blockburger test unnecessary.

### B. The enactment of a capital-murder statute, Code § 18.2-31, does not displace common-law principles.

The Commonwealth points out that in several capital murder cases, the Supreme Court has turned to the Blockburger test and, in so doing, upheld multiple death sentences for a single homicide. See Andrews, 280 Va. at 280-81, 699 S.E.2d at 265; Payne v. Commonwealth, 257 Va. 216, 228, 509 S.E.2d 293, 301 (1999).

The decisions in Andrews and Payne do not govern our decision here. Code § 18.2-31 created statutory crimes. Murder other than capital murder remains a common-law offense. The

statute that became Code § 18.2-32 was enacted against a common-law framework that contemplated the death penalty as the ordinary punishment for homicide. In contrast, Virginia's capital murder statute was enacted as a reaction to emerging case law from the United States Supreme Court that prohibits a State from imposing the death penalty, unless it effectively narrows the scope of murders eligible for the death penalty. See Jurek v. Texas, 428 U.S. 262, 276 (1976); Furman v. Georgia, 408 U.S. 238, 239-40 (1972) (per curiam). The General Assembly responded by enacting a specific statutory regime to govern capital murder cases. Fitzgerald, 223 Va. at 636-37, 292 S.E.2d at 810. Although the overriding purpose of both Code § 18.2-31 and Code § 18.2-32 is gradation, the legislative intent behind the two statutes differs. The intent animating the passage Code § 18.2-32 was to mitigate the harshness of the common law, whereas the purpose behind Code § 18.2-31 was to ensure that the worst murderers remained eligible for the ultimate sanction. This differing legislative purpose drives our resolution of the double jeopardy question.[3]

We conclude that appellant cannot be convicted for both first-degree murder on a felony homicide theory and second-degree murder for the killing of a single person.[4]

---

[3] Payne v. Commonwealth, 277 Va. 531, 674 S.E.2d 835 (2009), provides an additional illustration of the General Assembly departing from the common law's unitary theory of homicide. There, although the defendant killed a single individual, she was convicted of both felony murder and aggravated involuntary manslaughter. Id. at 535, 674 S.E.2d at 836-37. The statute defining the aggravated involuntary manslaughter, Code § 18.2-36.1(C), expressly provides that "[t]he provisions of this section shall not preclude prosecution under any other homicide statute," thereby manifesting a clear legislative intent to allow a prosecution under both theories. Id. at 538-39, 674 S.E.2d at 838-39.

[4] We acknowledge that the common-law pedigree of the felony-murder doctrine is the subject of scholarly debate. See, e.g., Guyora Binder, The Origins of American Felony Murder Rules, 57 Stan. L. Rev. 59 (2004). Whatever the merits of that academic debate, Virginia courts have long incorporated the doctrine into Virginia law and it remains part of our law to this day. See, e.g., Commonwealth v. Montague, 260 Va. 697, 700, 536 S.E.2d 910, 912 (2000) (explaining that "[t]he felony-murder doctrine originated at common law").

III. APPELLANT REMAINS CONVICTED OF FIRST-DEGREE FELONY MURDER.

Having concluded that appellant cannot be punished for both first-degree felony murder and second-degree murder for the killing of a single person, we turn to the question of which conviction must be vacated. Appellant maintains that his conviction for first-degree murder should be vacated. We disagree. "Where a defendant is convicted in a single trial of a lesser included offense and the greater offense, we must vacate the conviction of the lesser included offense." Clayton Motors v. Commonwealth, 14 Va. App. 470, 473, 417 S.E.2d 314, 316 (1992). Accordingly, we vacate appellant's conviction for second-degree murder.[5] We also vacate his associated charge for use of a firearm in the commission of second-degree murder, because conviction for that offense was contingent upon his conviction for second-degree murder.

CONCLUSION

We reverse and vacate appellant's conviction for second-degree murder and the attendant conviction for use of a firearm in the commission of a felony. We affirm the other convictions, including the conviction for first-degree felony murder and its associated firearm charge. We also remand for correction of a clerical error in the final sentencing order.[6]

Affirmed and remanded in part, reversed and vacated in part.

---

[5] Nothing in this opinion should be construed as detracting from the settled law under which the Commonwealth can "'charge the commission of a single offense in several different ways in order to meet the contingencies of proof.'" Andrews, 280 Va. at 286, 699 S.E.2d at 268 (quoting Buchanan v. Commonwealth, 238 Va. 389, 397, 384 S.E.2d 757, 762 (1989)).

[6] The record reflects that appellant was convicted of first-degree felony murder under Code § 18.2-32. The sentencing order, however, incorrectly states that he was convicted of felony homicide under Code § 18.2-33. See Code § 8.01-428(B) (permitting the correction of scrivener's errors).