COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present: Judges Alston, Chafin and Senior Judge Annunziata
Argued at Alexandria, Virginia

CARROLL EDWARD GREGG, JR.

OPINION BY
v.     Record No. 0047-16-4        JUDGE TERESA M. CHAFIN
FEBRUARY 28, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Herman A. Whisenant, Jr., Judge Designate

Blair D. Howard (Christopher T. Whelan; T. Brooke Howard, II;
Howard, Morrison, Ross and Whelan; Howard & Howard, on
briefs), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Following a jury trial, Carroll Edward Gregg, Jr. ("appellant") was convicted of common

law involuntary manslaughter and involuntary manslaughter in violation of Code § 18.2-154, or

"unlawfully shooting at an occupied vehicle wherein death resulted."[1] The jury fixed appellant's

punishment at ten years in prison for each conviction, and the trial court sentenced appellant

accordingly. On appeal, appellant argues that his rights against double jeopardy were violated

because he was convicted of and sentenced for both statutory involuntary manslaughter and

common law involuntary manslaughter. For the reasons that follow, we reverse the trial court's

imposition of consecutive sentences for each offense and remand for proceedings consistent with

this opinion.

---

[1] The jury acquitted appellant of use of a firearm in the commission of murder.

Background

On appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below, and "accord [it] the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004).

So viewed, the evidence is as follows. On the night of June 4, 2014, L&K Recovery attempted to repossess a truck on behalf of appellant's creditors pursuant to a repossession order. Junior Montero Sanchez ("Sanchez"), an employee of L&K Recovery, drove a tow truck to appellant's home. Alex Marin ("Marin"), also employed by L&K Recovery, drove a separate vehicle to that location. The two men verified the VIN number on the truck and then connected it to the tow truck.

When Marin used a lockout tool to open the door of the truck, its alarm system was activated. Marin heard a man yell out the window, "You better get the F out of here." Sanchez drove the tow truck down the driveway, with Marin following in the other vehicle, and stopped at the end of the driveway to check his GPS for directions. As Sanchez was turning out of the driveway, Marin heard "a loud bang, and right after that, [he] heard [Sanchez] screaming." He then "[saw Sanchez] throw his hands up and . . . [slump] over the steering wheel, and . . . the tow truck going into the ditch."

When Sergeant Darrell Shores spoke with appellant, he stated that he had accidentally shot the tow truck driver. Appellant stated that he "shot [at the tow truck], then he fell, then he shot again." He also stated that "[repossession teams] should not be allowed to do this in the middle of the night."

Appellant was charged with murder, without express designation of degree, use of a firearm in the commission of murder, and involuntary manslaughter by shooting into an occupied

vehicle causing death in violation of Code § 18.2-154.  Appellant moved to dismiss the indictment, contending that convictions of both the homicide offenses would violate the Double Jeopardy Clause.  Specifically, appellant argued that the charges were not separate offenses under Blockburger v. United States, 284 U.S. 299 (1932).  Appellant also argued that the legislature had not established that it intended to impose separate punishments for each offense when they were based on the same underlying conduct.  The trial court heard argument on the motion and withheld its ruling "until after the determination of guilt or innocence by the jury."

At the conclusion of the evidence, the jury was instructed on the offense of "maliciously shooting at an occupied vehicle with death resulting."  Instruction No. 15 provided for a second-degree murder conviction if the jury found that the Commonwealth had proven:

1. That the defendant shot at a vehicle; and
2. That such vehicle was occupied by one or more persons; and
3. That, as a result, the life of a person in such vehicle may have been put in peril; and
4. That the act was done with malice; and
5. That the death resulted from such malicious shooting.

The instruction additionally provided that if the jury found that the Commonwealth had proven the first three elements, but found "that the act was done unlawfully and not maliciously, and, further that death resulted from such unlawful shooting," the jury should find appellant guilty of involuntary manslaughter.

Instruction No. 20 addressed the charge of common law murder and provided for a first-degree murder conviction if the jury found that the Commonwealth had proven that appellant killed Sanchez intentionally, maliciously, willfully, deliberately, and with premeditation.  It further instructed that if the jury found that the Commonwealth had established that the killing "although unintended, was the direct result of the negligence of the defendant, and so gross, wanton and culpable as to show a callous disregard of human life," it should find appellant guilty of involuntary manslaughter.

- 3 -

The jury determined that appellant was guilty of involuntary manslaughter and "unlawfully shooting at an occupied vehicle wherein death resulted, involuntary manslaughter." The jury fixed appellant's sentence at ten years in prison for each of the involuntary manslaughter convictions.

Appellant filed a post-trial double jeopardy motion. Appellant acknowledged that Code § 18.2-154 did not use the term "criminal negligence." He argued, however, that every case involving a non-malicious violation of Code § 18.2-154 always involved criminal negligence. Thus, appellant argued that every violation of Code § 18.2-154 that did not involve malice was also a violation of common law involuntary manslaughter.

The Commonwealth countered that the elements of the two crimes were different when analyzed under the double jeopardy test articulated in Blockburger. The Commonwealth noted that common law involuntary manslaughter was an accidental killing with criminal negligence. Under Code § 18.2-154, however, there was no requirement to prove criminal negligence. Further, the Commonwealth argued that Code § 18.2-154 required proof of shooting at a vehicle.

The trial court concluded that the two offenses contained different elements under Blockburger and denied the motion.

Appellant then filed a motion to reconsider the trial court's double jeopardy ruling, contending that under this Court's *en banc* decision in Holley v. Commownealth, 64 Va. App. 156, 765 S.E.2d 873 (2014) (*en banc*), the two involuntary manslaughter convictions could not stand. He argued that a Blockburger analysis was unnecessary where legislative intent could be discerned by looking at the language in the statutes or the legislative history of the statutes in question. He further argued that under a common law unitary prosecution theory, wherein one victim and one death equal one offense, only one punishment could have been imposed.

Appellant maintained, as he does on appeal, that the legislative history of Code § 18.2-154 established that the General Assembly did not intend for cumulative punishments under Code § 18.2-154 and common law involuntary manslaughter.

In response, the Commonwealth argued that Holley was not controlling. Holley, the Commonwealth contended, involved separate provisions of a single statute that adopted common law homicide. Thus, unlike Code § 18.2-154, the statute implicated the common law unitary theory of homicide. The Commonwealth also argued that separate punishments were permitted because the two offenses contained different elements under Blockburger.

The trial court determined that Holley was distinguishable and denied the motion.

Analysis

On appeal, appellant contends that the trial court erred in imposing separate sentences for his convictions of common law involuntary manslaughter and statutory involuntary manslaughter under Code § 18.2-154. To resolve this question, we must first determine whether the General Assembly intended for multiple sentences to be available in this instance.

I. *Double Jeopardy*

The Fifth Amendment guarantees that no person "shall . . . for the same offense . . . be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The constitutional provision concerning double jeopardy embodies three guarantees: '(1) "It protects against a second prosecution for the same offense after acquittal. [(2)] It protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishments for the same offense."'" Blythe v. Commonwealth, 222 Va. 722, 725, 284 S.E.2d 796, 797 (1981) (alterations in original) (quoting Illinois v. Vitale, 447 U.S. 410, 415 (1980)). See also Clagett v. Commonwealth, 252 Va. 79, 95-96, 472 S.E.2d 263, 272-73 (1996). Appellant's argument on appeal involves the third protection, prohibiting multiple punishments for a single

offense. "[T]he role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Blythe, 222 Va. at 725, 284 S.E.2d at 798 (quoting Brown v. Ohio, 432 U.S. 161, 165 (1977)). When both of a defendant's convictions occur in a single trial, the question of whether multiple punishments are unconstitutional "cannot be resolved without determining what punishments the Legislative Branch has authorized." Id. (quoting Whalen v. United States, 445 U.S. 684, 688 (1980)). "The question resolves itself, therefore, into one of legislative intent where the issue is whether 'the Legislative Branch' has provided that two offenses may be punished cumulatively." Id. at 726, 284 S.E.2d at 798.

Appellate courts must "first consider whether 'the legislative intent is clear from the face of the statute or the legislative history . . . .'" Andrews v. Commonwealth, 280 Va. 231, 284, 699 S.E.2d 237, 267 (2010) (quoting Garrett v. United States, 471 U.S. 773, 779 (1985)). In the absence of explicit or implicit statements of legislative intent, reviewing courts must determine the legislative authorization by examining the relevant statutes. "[T]he test to be applied to determine whether there are two offenses or only one is whether each [offense charged] requires proof of an additional fact which the other does not." Coleman v. Commonwealth, 261 Va. 196, 200, 539 S.E.2d 732, 734 (2001) (second alteration in original) (quoting Blockburger, 284 U.S. at 304).

Appellant contends that the General Assembly did not intend for a defendant to be punished cumulatively for common law involuntary manslaughter and the statutory manslaughter offense included in Code § 18.2-154. Where legislative intent is evident from the face of the statute or the legislative history, it is not necessary to employ the test set forth in Blockburger to determine whether a court can impose multiple punishments for a single act. Holley, 46

Va. App. at 163, 765 S.E.2d at 876. However, when legislative intent is not expressly stated, we must rely on the Blockburger test.

*a. Legislative Intent*

"When construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." Cuccinelli v. Rector & Visitors of the Univ. of Va., 283 Va. 420, 425, 722 S.E.2d 626, 629 (2012) (quoting Commonwealth v. Amerson, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011)). "To best ascertain that intent, '[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language.'" Blake v. Commonwealth, 288 Va. 375, 381, 764 S.E.2d 105, 107 (2014) (quoting Kozmina v. Commonwealth, 281 Va. 347, 349, 706 S.E.2d 860, 862 (2011)).

Where a legislature intends to impose multiple punishments for the same course of conduct, the imposition of multiple punishments does not violate the Constitution. See Missouri v. Hunter, 459 U.S. 359, 366-68 (1983); Albernaz v. United States, 450 U.S. 333, 344 (1981). For instance, the Supreme Court of Virginia determined that the legislature intended to impose multiple punishments for the same course of conduct when a defendant is sentenced for felony homicide under Code § 18.2-33 and aggravated involuntary manslaughter under Code § 18.2-36.1(B) for killing one victim. The Court stated that

> [c]learly, the language in Code § 18.2-36.1(C) stating that "[t]he provisions of this section shall not preclude prosecution under any other homicide statute" expresses the legislative intent for multiple punishments. Code § 18.2-36.1(C) does not make an exception for a prosecution under a statute that was previously a common law crime. Code § 18.2-33 is a homicide statute; it defines the elements and states the punishment for felony homicide. Code § 18.2-36.1(C) specifically states that prosecution for aggravated involuntary manslaughter does not preclude prosecution under another homicide statute such as Code § 18.2-33.

Payne v. Commonwealth, 277 Va. 531, 539-40, 674 S.E.2d 835, 839 (2009). Thus, there was a clear legislative intent to allow convictions under both theories. Id. at 538-39, 674 S.E.2d at 838-39.

In Holley, the defendant was charged with both first-degree murder and second-degree murder for killing one person. When considering the legislative intent behind the passing of the statute that was to become Code § 18.2-32,[2] this Court determined that the General Assembly did not intend to set aside common-law rules for single-homicide punishment by making the punishment more severe. Instead, the enactment of the statute mitigated the harshness of the common law's punishment for murder. This Court stated that, "[i]n adopting the predecessor to Code § 18.2-32, the General Assembly articulated its purpose, 'The several offen[s]es which are included under the general denomination of murder, differ so greatly from each other in the degree of their atrociousness, that it is unjust to involve them in the same punishment.'" Holley, 64 Va. App. at 163, 765 S.E.2d at 876 (quoting 1796 Va. Acts ch. 2). The predecessor to Code § 18.2-32 was enacted "to mitigate the harshness of the common law which punished murder and numerous other crimes with death." Id. at 164, 765 S.E.2d at 876 (quoting Fitzgerald v. Commonwealth, 223 Va. 615, 636, 292 S.E.2d 798, 810 (1982)). Therefore, this Court held that

---

[2] Code § 18.2-32 states:

> Murder, other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, arson, rape, forcible sodomy, inanimate or animate object sexual penetration, robbery, burglary or abduction, except as provided in [Code] § 18.2-31, is murder of the first degree, punishable as a Class 2 felony.

> All murder other than capital murder and murder in the first degree is murder of the second degree and is punishable by confinement in a state correctional facility for not less than five nor more than forty years.

the General Assembly did not intend to allow cumulative punishments for multiple murder offenses based on one underlying death. Thus, this Court concluded that the Double Jeopardy Clause prohibited the defendant's conviction and punishment for both first-degree and second-degree murder.

In this case, there is no clear legislative intent to allow convictions under both common law involuntary manslaughter and Code § 18.2-154. Code § 18.2-154 is clear, however, that when a person unlawfully shoots at a vehicle, and the occupant is put in peril and death results, that person is guilty of involuntary manslaughter.

While common law involuntary manslaughter is a Class 5 felony, it is not statutorily defined. See Code § 18.2-36. The Supreme Court has explained the elements of involuntary manslaughter as follows:

> The crime of common law involuntary manslaughter has two elements: (1) the accidental killing of a person, contrary to the intention of the parties; and (2) the death occurs in the defendant's prosecution of an unlawful but not felonious act, or in the defendant's improper performance of a lawful act. To constitute involuntary manslaughter, the "improper" performance of a lawful act must amount to an unlawful commission of that lawful act, manifesting criminal negligence.

Noakes v. Commonwealth, 54 Va. App. 577, 585, 681 S.E.2d 48, 52 (2009) (quoting West v. Dir., Dep't of Corr., 273 Va. 56, 63-64, 639 S.E.2d 190, 195 (2007) (internal citations omitted)), aff'd, 280 Va. 338, 699 S.E.2d 284 (2010).

Code § 18.2-154 states, in pertinent part,

> [a]ny person who maliciously shoots at . . . any motor vehicle or other vehicles when occupied by one or more persons, whereby the life of any person . . . in such motor vehicle or other vehicle, may be put in peril, is guilty of a Class 4 felony. . . .
>
> If any such act is committed unlawfully, but not maliciously, the person so offending is guilty of a Class 6 felony and, in the event of the death of any such person, resulting from such unlawful act, the person so offending is guilty of involuntary manslaughter.

There is no evidence in the legislative history of Code § 18.2-154 or case law that suggests that the General Assembly intended to create an offense separate and distinct from common law involuntary manslaughter, or to permit the Commonwealth to obtain multiple convictions and punishments under Code § 18.2-154 and common law involuntary manslaughter for a single killing. The enactment of Code § 18.2-154 did not make the punishment for involuntary manslaughter more severe, nor does it mitigate the punishment when the criminally negligent act leading to the death of an individual is shooting at an occupied vehicle. Code § 18.2-154 simply created a mechanism that permits the Commonwealth to substitute proof of distinct facts in place of criminal negligence. The predicate facts of an unlawful shooting at an occupied vehicle resulting in death would always constitute criminal negligence, and therefore, a person committing that offense "*is* guilty of involuntary manslaughter." Code § 18.2-154 (emphasis added). As the language of Code § 18.2-154 is unambiguous, "we are bound by the plain meaning of that language." Blake, 288 Va. at 381, 764 S.E.2d at 107 (quoting Kozmina, 281 Va. at 349, 706 S.E.2d at 862).

### b. *Blockburger*

Even though the intent of the legislature is clear in this case, analysis under Blockburger would not produce a different result.

> In determining whether a defendant who has been convicted of two offenses may receive multiple punishments, the test to be applied is "whether each [offense] requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932); Brown, 432 U.S. at 166; Commonwealth v. Hudgins, 269 Va. 602, 605, 611 S.E.2d 362, 364 (2005); Alston v. Commonwealth, 264 Va. 433, 438, 570 S.E.2d 801, 804 (2002); Coleman, 261 Va. at 200, 539 S.E.2d at 734. In applying this test, the two offenses must be considered in the abstract, rather than in the context of the facts of the particular case being reviewed. Whalen v. United States, 445 U.S. 684, 694 n.8 (1980); Hudgins,

269 Va. at 606, 611 S.E.2d at 365; Coleman, 261 Va. at 200, 539
S.E.2d at 734.

West, 273 Va. at 63, 639 S.E.2d at 195 (alteration in original).

When reviewed in the abstract, the charges in the present case do not qualify as separate

offenses within the meaning of Blockburger. The offense of common law involuntary

manslaughter does not require proof of a fact different from those required for a conviction of

involuntary manslaughter under Code § 18.2-154. See West, 273 Va. at 63-64, 639 S.E.2d at

194-96. [3]

Because the element of shooting at an occupied vehicle in Code § 18.2-154 is simply the

criminally negligent act which renders the accused guilty of involuntary manslaughter, we

cannot say that Code § 18.2-154 requires proof of a fact that is not required to prove the common

law crime of involuntary manslaughter. Convictions for both these offenses resulted in appellant

receiving multiple punishments for the same offense, and thus, the Double Jeopardy Clause was

violated.

Conclusion

We conclude that the Commonwealth was free to instruct the jury on both common law

involuntary manslaughter and involuntary manslaughter by shooting into an occupied vehicle

causing death under Code § 18.2-154. The Commonwealth, however, could not seek sentences

---

[3] West involved a defendant who was convicted of both aggravated involuntary
manslaughter in violation of Code § 18.2-36.1 and common law involuntary manslaughter.
West, 273 Va. at 59-60, 639 S.E.2d at 193. The defendant was sentenced to concurrent
sentences for the involuntary manslaughter convictions. Id. at 60, 639 S.E.2d at 193. He argued
on appeal that he was denied effective assistance of counsel because no double jeopardy
challenge was raised to his convictions of aggravated involuntary manslaughter and common law
involuntary manslaughter. Id. at 59-61, 639 S.E.2d at 193-94.

The Supreme Court held that the charges were not separate offenses under Blockburger.
Common law involuntary manslaughter did not require proof of a fact different from those
required for aggravated involuntary manslaughter. Id. at 63-64, 639 S.E.2d at 194-96. The
Court held that the defendant was entitled to a writ of habeas corpus with regard to his common
law involuntary manslaughter conviction. Id. at 67, 639 S.E.2d at 197.

for both convictions.  See Andrews, 280 Va. at 287-88, 699 S.E.2d at 269 ("[I]f the Commonwealth obtains convictions on both [instructions] it may not seek to have separate punishments imposed for each offense.  Rather it must elect which [finding of guilt] it will proceed upon in the penalty-determination phase of the trial.").  See also Clagett, 252 Va. at 95-96, 472 S.E.2d at 272-73.  The imposition of two ten-year sentences upon appellant for convictions under Code § 18.2-154 and for common law involuntary manslaughter violated the double jeopardy prohibition against multiple punishments for the same offense.  See id.

For the reasons stated above, we remand this case for a new penalty-determination proceeding wherein the circuit court shall require the Commonwealth to elect between the convictions under Code § 18.2-154 and common law manslaughter.  The trial court, thereafter, shall vacate the other conviction.

Reversed and remanded.