COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Malveaux and Callins
Argued by videoconference


JESIAH FLOWERS
                                                              OPINION BY
v.        Record No. 0228-24-2          CHIEF JUDGE MARLA GRAFF DECKER
                                                         MARCH 18, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Dennis M. Martin, Sr., Judge

Andrew M. Sacks (Sacks & Sacks, P.C., on brief), for appellant.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Jesiah Flowers appeals his convictions of two counts of malicious shooting within an

occupied building in violation of Code § 18.2-279, one count of which was classified as second-

degree murder under the statute because it resulted in the death of an innocent bystander.  He

also appeals his convictions of attempted murder in the first degree, malicious wounding,

shooting in the commission of a felony, and use of a firearm in the commission of a felony in

violation of Code §§ 18.2-26, -32, -51, -53, and -53.1.  The offenses stem from a shoot-out

between Flowers and Devin Mitchell that resulted in the death of a bystander and the injury of

another.

Flowers raises several distinct issues on appeal.  He challenges the joinder of his charges

with Mitchell's in a single trial.  He also contends that the trial court erred by admitting into

evidence a video exhibit showing him and Mitchell arguing with each other about two years

before the shootings.  Additionally, Flowers suggests that the trial court violated his

constitutional right to a public trial by excluding his mother from the courtroom before he

testified. Finally, he argues that the Commonwealth's evidence was insufficient to support his convictions. We hold the trial court did not err and affirm the convictions.

BACKGROUND[1]

On July 2, 2022, Flowers and Mitchell apparently unexpectedly encountered each other on the staircase of an apartment building. They each drew their firearms. Flowers fired three times, and Mitchell fired twelve. Two innocent bystanders were caught in the crossfire. One bystander died, and the other one was wounded.

The Commonwealth brought a number of charges against both Flowers and Mitchell as a result of the shoot-out. It asked the court to try the offenses against the two in a single trial. Over Flowers's objection, the trial court granted the motion.

At trial, the primary evidence against Flowers and Mitchell was in the form of videos of the shootings, recorded by the apartment building's surveillance equipment. The Commonwealth also introduced a video surveillance recording from January 14, 2020, more than two years before the shoot-out. That recording captured the two co-defendants, high school students at the time, having a brief argument at the school. The trial court admitted the video over Flowers's objection to explain motive and to prove the defendants knew each other.

After the close of the Commonwealth's evidence, Flowers and Mitchell each testified in his own defense. Each defendant claimed that the other instigated the gun violence.

During the trial, the court excluded Flowers's mother from the courtroom for being disruptive. Defense counsel asked the trial court to allow her back into the courtroom while Flowers testified, but the court denied the motion.

---

[1] On appeal, we view the evidence in the light most favorable to the Commonwealth, the prevailing party below. *See Hargrove v. Commonwealth*, 77 Va. App. 482, 491 n.1 (2023).

After hearing the evidence, the jury found Flowers guilty of two counts of maliciously discharging a firearm within an occupied building. Although the jury also found him guilty of a separate charge of second-degree murder, the Commonwealth's theory for that offense was that Flowers maliciously discharged a firearm within an occupied building and a death resulted. *See* Code § 18.2-279 (providing that if someone maliciously discharges a firearm within an occupied building and someone dies as a result, that person "is guilty of murder in the second degree"). In accordance with the parties' agreement, therefore, the trial court treated Flowers's conviction for second-degree murder as subsumed in one of his convictions for maliciously shooting within an occupied building. As a result, the court set aside the separate murder conviction. In addition, the jury found Flowers guilty of attempted murder in the first degree, malicious wounding, two counts of use of a firearm in the commission of a felony, and three counts of shooting in the commission of a felony.[2] He was sentenced to a total of eighty-two years of incarceration, with thirty-two years suspended.

ANALYSIS

Flowers challenges the trial court's decisions to try Mitchell with him jointly, to admit the video recording of the school altercation, to exclude his mother from the courtroom, and to hold that the evidence was sufficient to support his convictions. We consider each issue in turn.

I. Joinder

Flowers contends the trial court erred by granting the Commonwealth's motion to join his trial with Mitchell's. He argues this legal error was prejudicial to him and as such the convictions should be reversed.

---

[2] The jury found Flowers not guilty of one count of using a firearm in the commission of a felony and three counts of unlawful wounding while committing a felony.

- 3 -

The law regarding joinder is well settled. On the Commonwealth's motion, "for good cause shown, the court shall order persons charged with participating in contemporaneous and related acts or occurrences or in a series of acts or occurrences constituting an offense or offenses, to be tried jointly unless such joint trial would constitute prejudice to a defendant." Code § 19.2-262.1; *see* Rule 3A:10(a). Subject to these restrictions, the decision whether to try individuals jointly rests within the discretion of the trial court. *See Hargrove v. Commonwealth*, 77 Va. App. 482, 496 (2023).

The "bell-shaped curve of reasonability" underpinning appellate review for an abuse of discretion "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [appellate] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (first alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)). Stated another way, "[a] reviewing court can conclude that an abuse of discretion occurred only when reasonable jurists could not differ about the correct result." *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022).

As a threshold matter, in the trial court, the Commonwealth bears the "initial burden of persuasion" of "showing good cause for a joint trial." *Allen v. Commonwealth*, 58 Va. App. 618, 622 (2011). Once this obligation is met, the defendant seeking severance bears the burden of "demonstrat[ing] that [the] joint trial" would "cause[] 'actual,' 'legally cognizable prejudice' to his rights." *Hargrove*, 77 Va. App. at 496 (quoting *Allen*, 58 Va. App. at 623). This is a very high hurdle. On appellate review of a joinder decision, a defendant can demonstrate prejudice by

showing a "'a serious risk that [the] joint trial . . . compromise[d] a specific trial right of one of the defendants' or [that] the joinder . . . 'prevent[ed] the jury from making a reliable judgment about guilt or innocence.'" *Id.* (second, third, fifth, and sixth alterations in original) (quoting *Allen*, 58 Va. App. at 623-24). One example of when prejudice can occur is "when evidence inadmissible against a defendant, if tried alone, is admitted against a co[-]defendant in a joint trial." *Id.* at 501-02 (alteration in original) (quoting *Adkins v. Commonwealth*, 24 Va. App. 159, 163 (1997)).

Flowers makes no claim that any evidence admitted at trial would not have been admitted against him in a separate trial. *See Adkins*, 24 Va. App. at 163 (noting that "[a] defendant has no right to exclude relevant and competent evidence" (quoting *Barnes v. Commonwealth*, 22 Va. App. 406, 413 (1996))). He concedes that the charges against him and Mitchell were contemporaneous and related but argues that joinder was nonetheless inappropriate because it was prejudicial. As support for this argument, Flowers suggests that because of the antagonistic nature of their respective defenses, joinder posed the "potential for jury confusion and distraction, . . . ma[king] it difficult for the jury to focus individually on each defendant."

These claims of possible prejudice simply do not provide a basis for reversal. The fact that the jury heard evidence against Mitchell, as well as that Mitchell attempted to cast blame for the shootings on Flowers, does not constitute actual prejudice to Flowers under the applicable legal standard. *See id.* (rejecting the theory that actual prejudice is demonstrated when a co-defendant presents a hostile theory of the case). In sum, Flowers has failed to demonstrate that the joinder interfered with the jury's ability to "mak[e] a reliable judgment about guilt or innocence." *See Hargrove*, 77 Va. App. at 496 (quoting *Allen*, 58 Va. App. at 624).

Based on this record, the trial court did not abuse its discretion by joining Flowers's trial with Mitchell's.

## II. Admissibility of Evidence

Flowers contests the admission into evidence of the 2020 video recording of his brief argument with Mitchell at school. The court admitted the evidence for dual purposes: to explain motive and to prove the absence of mistake.

It is fundamental that on appeal, a trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Hargrove*, 77 Va. App. at 505. And again, "[a] reviewing court can conclude that an abuse of discretion occurred only when reasonable jurists could not differ about the correct result." *Howard*, 74 Va. App. at 753. Based on these principles, this Court reviews the ruling.

Generally, "evidence of other crimes, wrongs, or acts is . . . not admissible to prove the character trait of a person . . . to show that the person acted in conformity" with that trait. Va. R. Evid. 2:404(b). Even so, this category of evidence may be admissible for other purposes, such as to establish intent. *Id.* "Virginia . . . 'follows an "inclusionary approach" to the uncharged misconduct doctrine by admitting such evidence "if relevant[] for any purpose *other than* to show a mere propensity or disposition on the part of the defendant to commit the crime."'" *Castillo v. Commonwealth*, 70 Va. App. 394, 415 (2019) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 757 n.8, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

The evidence of the argument Flowers and Mitchell had in high school was not admitted to prove a propensity for violence. Instead, it was offered to prove motive and intent.[3] Flowers was charged with attempting to murder Mitchell. He claimed that he initially did not recognize Mitchell and shot at him only out of fear. Similarly, Mitchell testified that he did not recognize

---

[3] Motive and intent are related but separate concepts. "Motive is the inducing cause, while intent is the mental state with which the criminal act is committed . . . ." *Tibbs v. Commonwealth*, 31 Va. App. 687, 704 (2000) (quoting *Cantrell v. Commonwealth*, 229 Va. 387, 397 (1985)).

Flowers when he first saw him on the staircase. The video from their high school shows an argument between the two that quickly escalated to a brief physical altercation until they were separated. As a result, we hold that the evidence of their prior scuffle was relevant to prove present motive and intent. Although the school altercation occurred about two years before the shootings, the trial court acted within its discretion in determining that the evidence was not "so remote that it lack[ed] probative value." *See Collins v. Commonwealth*, 226 Va. 223, 230 (1983) (quoting *Bunch v. Commonwealth*, 225 Va. 423, 439 (1983)).

The conclusion that the challenged evidence was relevant for a permissible purpose, however, does not end the inquiry. Evidence that meets an exception to the rule is admissible only if its "legitimate probative value . . . outweighs its incidental prejudice." *Kenner v. Commonwealth*, 299 Va. 414, 427 (2021) (quoting Va. R. Evid. 2:404(b)). And the responsibility for balancing these considerations, just like the initial question of whether an exception to the rule applies, "rests in the sound discretion of the trial court." *Walker v. Commonwealth*, 302 Va. 304, 320 (2023) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008)). "The fact that some prejudice may result does not justify automatic exclusion." *Mayfield v. Commonwealth*, 59 Va. App. 839, 849 (2012) (quoting *Evans-Smith v. Commonwealth*, 5 Va. App. 188, 196 (1987)). After all, clearly "[a]ll evidence tending to prove guilt is prejudicial to an accused." *Id.* (alteration in original) (quoting *Powell v. Commonwealth*, 267 Va. 107, 141 (2004)). "Virginia law . . . intervenes only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate inferences." *Thomas*, 44 Va. App. at 758.

The evidence of the previous scuffle between Flowers and Mitchell was relevant to their states of mind at the time of the shoot-out. The record supports the trial court's ruling that the probative value of the high school video outweighed the danger of incidental prejudice. Once the Commonwealth met the threshold for admitting the video, the two-year span between the

school altercation and the shootings pointed out by Flowers was "relevant only to the jury's assessment of the weight to give it." *McDaniel v. Commonwealth*, 73 Va. App. 299, 316 (2021).

For these reasons, the trial court did not abuse its discretion by admitting the challenged evidence.

### III. Exclusion of Flowers's Mother from the Courtroom

Flowers suggests that the exclusion of his mother from the courtroom denied him the constitutional right to a public trial. The Commonwealth counters that this argument is procedurally barred because he failed to raise it below.

It is well established that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. This rule "applies to bar even constitutional claims." *Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023) (quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004)). However, "[p]reserving an argument may not require formal exceptions or objections 'if a trial court is aware of a litigant's legal position.'" *Hannah v. Commonwealth*, 303 Va. 106, 125 (2024) (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)). "The purpose of th[e] contemporaneous objection requirement [in this Rule] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Clark*, 78 Va. App. at 766-67 (first alteration in original) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)).

"Specificity and timeliness undergird the contemporaneous-objection rule . . . ." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). This is so because not only does it put the issue squarely before the trial court, "a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding." *See Fountain v. Commonwealth*, 64 Va. App. 51, 56 (2014) (quoting *Weidman v. Babcock*, 241 Va. 40, 44 (1991)). "A general

- 8 -

argument or an abstract reference to the law is not sufficient to preserve an issue." *Baez v. Commonwealth*, 79 Va. App. 90, 107 (2023) (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc), *aff'd by unpub'd order*, No. 040019 (Va. Oct. 15, 2004)). And "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review." *Hargrove*, 77 Va. App. at 504 (quoting *Edwards*, 41 Va. App. at 760). The Supreme Court has made clear, "[o]n appeal, though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court." *Moison v. Commonwealth*, 302 Va. 417, 419 (2023) (quoting *W. Alexandria Props., Inc. v. First Va. Mortg. & Real Estate Inv. Tr.*, 221 Va. 134, 138 (1980)).

At trial, apparently when Flowers realized his mother was no longer in the courtroom, his counsel asked that she be allowed to return to hear him testify. The court refused the request, explaining that she had been excluded for continuing to be disruptive. Defense counsel urged the court to allow her back into the courtroom while Flowers testified because his testimony would "affect the way his life goes for the rest of his life and [would be] affecting her life." The trial court did not readmit his mother.

Flowers did not argue in any form or fashion to the trial court that the decision to bar his mother from the courtroom violated his constitutional right to a public trial. His argument was strictly limited to wanting his mother to hear his testimony. On appeal, Flowers suggests that his constitutional challenge was encompassed by his request to have his mother allowed back into the courtroom. The record, however, does not support this assertion. Even the timing of his entreaty—made right before he testified—suggested that he made it on a purely emotional ground, not on a constitutional one. The Supreme Court has warned that "neither an appellant nor an appellate court should 'put a different twist on a question that is at odds with the question presented to the trial court'" in order to address an issue on appeal that was not raised below. *Bethea*, 297 Va. at 744

(quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)). After reviewing the record, we conclude that Flowers's objection was not sufficiently specific to alert the trial court to his current claim that excluding his mother from the courtroom violated his constitutional right to a public trial. As a result, under Rule 5A:18, the appellant failed to preserve for appeal his current constitutional challenge to the exclusion of his mother from the courtroom.[4]

## IV. Sufficiency of the Evidence

Flowers challenges the sufficiency of the Commonwealth's evidence to prove the crimes. In this Court's review of the sufficiency of the evidence to support a conviction, it will affirm the decision unless the trial court was plainly wrong or the conviction lacked evidence to support it. *See Hargrove*, 77 Va. App. at 506-07. "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Hogle v. Commonwealth*, 75 Va. App. 743, 753 (2022) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). When conducting this review, the "appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Barney*, 302 Va. at 97 (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). In the end, the "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

In addition, when evaluating the sufficiency of the evidence, the Court "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va.

---

[4] Flowers has not asked this Court to invoke either of the exceptions recognized by Rule 5A:18, and we do not raise them sua sponte. *See* Rule 5A:18; *Jones v. Commonwealth*, 71 Va. App. 597, 607 n.9 (2020).

455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 512-13 (2003)). It is also the function of the trier of fact to determine "the credibility of the witnesses and the weight afforded their testimony." *Thorne v. Commonwealth*, 66 Va. App. 248, 253 (2016). Finally, the requirement of appellate deference to the factfinder "applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of . . . video evidence.'" *Barney*, 302 Va. at 97 (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)).

With these well-established principles in mind, we address the particular issues that Flowers has raised.

A. Second-Degree Murder and Application of Common-Law Principles

Flowers makes a very specific argument in support of reversal. He contends that his conviction for murder cannot stand because the evidence was insufficient based on the common-law intent requirement for the offense as set out in *Rivers v. Commonwealth*, 21 Va. App. 416 (1995).

In *Rivers*, 21 Va. App. at 419, the Court reversed a conviction for second-degree murder under Code § 18.2-32, which relies in part on the common-law elements of murder to define the offense. In that case, during a gunfight between Rivers and his neighbor, the neighbor shot and killed a bystander. *Id.* at 420. The Court held that "no existing common law theory," such as concert of action, transferred intent, or felony murder, supported the conviction both because he did not fire the fatal bullet and it was fired by someone acting in opposition to him. *Id.* at 421-24.

Like in *Rivers*, here the prosecution did not establish that Flowers fired the fatal bullet. Unlike Rivers, however, Flowers was convicted of second-degree murder under Code § 18.2-279, which itself sets out the elements of the offense it proscribes. That statute provides generally that it is a felony "[i]f any person maliciously discharges a firearm within any building

- 11 -

when occupied by one or more persons in such a manner as to endanger the life or lives of such person or persons." Code § 18.2-279; *see Taylor v. Commonwealth*, 77 Va. App. 149, 163 (2023) (defining the "essence" of the offense as "the risk of endangerment or death to another as a result of discharging a firearm"). Under the additional language of the statute, the offender "is guilty of murder in the second degree" "[i]n the event of the death of any person, resulting from such malicious shooting."[5] Code § 18.2-279. *See generally Artis v. Commonwealth*, 76 Va. App. 393, 402 (2023) (noting that as a general rule statutes are understood through their plain language). Because of the precise statutory language, the more general analysis under the common law applied in *Rivers* is inapplicable to Flowers's specific second-degree murder conviction as defined by Code § 18.2-279. *See generally Artis*, 76 Va. App. at 402 (explaining that the common law applies *unless* abrogated by a legislative enactment).

Consequently, the analysis and reliance on common-law principles in *Rivers* is applicable to second-degree murder under Code § 18.2-32. But *Rivers* does not apply to Flowers's second-degree murder conviction under the statutory scheme provided by Code § 18.2-279. Therefore, Flowers's reliance on *Rivers* is unavailing.

---

[5] By providing for a graduated offense in Code § 18.2-279, the legislature "created a mechanism that permits the Commonwealth to substitute proof of distinct facts in place of criminal negligence" or a malicious homicide. *See Gregg v. Commonwealth*, 67 Va. App. 375, 386 (2017) (discussing the mechanism in Code § 18.2-154, which proscribes the offense of shooting into an occupied vehicle and sets forth similar statutory language), *aff'd*, 295 Va. 293 (2018); *see also Willis v. Commonwealth*, 10 Va. App. 430, 441-42 (1990) (listing the elements of murder under Code § 18.2-154).

B. Malice

Flowers contends that the Commonwealth failed to prove that he acted with malice because the evidence instead compelled a finding that he acted in the heat of passion.[6]

Malice is defined as "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Taylor*, 77 Va. App. at 174 (quoting *Meade*, 74 Va. App. at 813); *see also Bryant v. Commonwealth*, 295 Va. 302, 310 (2018) ("'Maliciously' describes a wrongful act done 'willfully or purposefully.'" (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984))). This state of mind is proven when the defendant "either . . . acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Meade*, 74 Va. App. at 813 (quoting *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020)). Further, "malice may be implied from the deliberate use of a deadly weapon." *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Smith v. Commonwealth*, 239 Va. 243, 264 (1990)). "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Haefele v. Commonwealth*, 75 Va. App. 591, 602-03 (2022) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)).

Conversely, "heat of passion is a defense based on a defendant's lack of malice." *Washington v. Commonwealth*, 75 Va. App. 606, 619 (2022). It "refers to the *furor brevis* which renders a man deaf to the voice of reason." *Meade*, 74 Va. App. at 814 (quoting *Rhodes v.*

---

[6] Flowers also argues that he acted in mutual combat. The concept of mutual combat is related to heat of passion and arises in the context of voluntary manslaughter. *See, e.g.*, *Diaz v. Commonwealth*, 80 Va. App. 286, 314 (2024). Flowers suggests that since he acted in mutual combat and the heat of passion, his convictions for second-degree murder and attempted murder should have been reduced to voluntary manslaughter and attempted manslaughter, respectively. We do not separately address these arguments because they are subsumed by our ruling that the evidence supported the jury's conclusion that Flowers acted with malice and not in the heat of passion. *See generally Watson-Scott v. Commonwealth*, 298 Va. 251, 258 n.2 (2019) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (alteration in original) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

*Commonwealth*, 41 Va. App. 195, 200 (2003)). "'[W]hen provocation reasonably produces fear' or anger, causing 'one to act on impulse without conscious reflection,' no malice exists." *Washington*, 75 Va. App. at 619 (alteration in original) (quoting *Rhodes*, 41 Va. App. at 200). In other words, heat of passion and malice "are mutually exclusive." *See Meade*, 74 Va. App. at 814 (quoting *Lynn v. Commonwealth*, 27 Va. App. 336, 355 (1998)).

Flowers posits that he acted only because he was confronted first by Mitchell, "who drew his weapon down on" Flowers. He reasons that Mitchell's brandishing of a firearm reasonably provoked his own "firearm response."

The jury was properly instructed on malice and heat of passion and found beyond a reasonable doubt that Flowers acted with malice rather than in the heat of passion. This factual determination is supported by the record and necessarily included the jury's consideration of the circumstances surrounding the shootings. *See Haefele*, 75 Va. App. at 602-03 (noting that malice is a question of fact).

Mitchell had his phone to his ear as he passed Flowers and his two companions on the stairs. According to Flowers, as they walked by each other, Mitchell said something that Flowers interpreted as aggressive or threatening. "However, [w]ords alone, no matter how insulting, are never sufficient to constitute heat of passion." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (alteration in original) (quoting *Rhodes*, 41 Va. App. at 201). Flowers made no effort to continue up the stairs and avoid the conflict. Instead, he held his hand in his sweatshirt pocket where he kept his gun and followed Mitchell down the stairs to confront him. As Flowers descended the stairs, his two companions also had guns in their hands. Although Mitchell displayed his gun first, he held it lowered to the floor, and Flowers was the first to fire.

In short, the evidence, including the videos of events surrounding the shoot-out, supports the jury's finding that Flowers fired his weapon in a "purposeful and cruel act without any or

without great provocation." *See Meade*, 74 Va. App. at 813 (quoting *Fletcher*, 72 Va. App. at 507); *see also Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) ("An appellate court may neither find facts nor draw inferences that favor the losing party that the factfinder did not."); *Barney*, 302 Va. at 97 ("The factfinder 'views video and other evidence to determine what it believes happened; we, on appellate review, view video evidence for the limited purpose of determining whether any . . . rational factfinder could have viewed it as the [factfinder] did.'" (second alteration in original) (quoting *Meade*, 74 Va. App. at 806)). Flowers's intentional conduct supports the jury's finding that he acted deliberately rather than impulsively in the heat of passion. *See Meade*, 74 Va. App. at 814-15. In these circumstances, Flowers's intentional use of a deadly weapon supports the conclusion that he acted with malice. Consequently, the evidence was sufficient to support the convictions.

CONCLUSION

The trial court acted within its discretion by allowing the cases against Flowers and Mitchell to be tried together and by admitting the video evidence of the alteration between them in high school. We do not consider whether the trial court denied Flowers his constitutional right to a public trial because that issue is barred by Rule 5A:18. Last, the evidence was sufficient to prove that Flowers had the requisite intent and acted with malice. Accordingly, the convictions are affirmed.

*Affirmed.*